UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| LINDA ASH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-CV-00130-JAR |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Linda Ash's ("Ash") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*.

### I.      Background

Plaintiff Linda Ash filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., on October 10, 2012.  (Tr. 113-19)  The Social Security Administration denied Ash's claim on November 30, 2012.  (Tr. 11)  Ash filed a request for a hearing before an administrative law judge ("ALJ"), and following a video hearing, the ALJ issued a written decision on January 24, 2014 upholding the denial of benefits.  (Tr. 11-18)  Ash requested review of the ALJ's decision by the Appeals Council, which the Appeals Council denied on May 20, 2015.  (Tr. 1-4)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Ash filed this appeal on July 20, 2015.  (Doc No. 1)  The Commissioner filed an Answer on September 22, 2015.  (Doc. No. 7)  Ash filed a brief in support of her Complaint.  (Doc. No. 9)  The Commissioner filed a Brief in Support of the Answer.  (Doc. No. 10)

## II.    Decision of the ALJ

The ALJ determined Ash had not engaged in substantial gainful activity since September 20, 2010, the alleged onset date of disability.  (Tr. 13)  The ALJ found Ash had the following severe impairments: arthralgias[1] and history of peripheral vascular disease.  (Tr. 14)  The ALJ further found that Ash had the following non-severe impairments: irritable bowel syndrome ("IBS"), diabetes, high blood pressure, and depression.  (Tr. 13).  The ALJ concluded that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.  (Tr. 14)

After considering the entire record, the ALJ determined Ash had the residual functional capacity ("RFC") to perform light work except that she can only occasionally perform all postural activities.  (Tr. 14)

The ALJ determined that Ash is able to perform her past relevant work as a loan clerk, and this work does not require the performance of work-related activities precluded by Ash's RFC.  (Tr. 16)  Thus, the ALJ found Ash not disabled within the meaning of the Social Security Act.  (Tr. 17)

## III.    Administrative Record

The following is a summary of the relevant evidence before the ALJ.

## A.    Hearing Testimony

The ALJ held a hearing in this matter on January 14, 2014.  Ash testified and was represented by counsel.  (Tr. 23-41)  Vocational expert Janice Hastert also testified at the hearing.  (Tr. 41-43)

## 1.    Plaintiff's testimony

Ash was 64 years old at the time of the hearing.  (Tr. 28)  She last worked in 2010, and she

---

[1] According to the Mayo Clinic, arthralgia is inflammation or pain from within a joint. http://www.mayoclinic.org/symptoms/joint-pain/basics/definition/sym-20050668 (last visited September 15, 2016).

performed line title research. (Tr. 28) This job required her to travel to courthouses and pull books, which required her to climb ladders. (Tr. 28) She stated that she stayed at this job for approximately six months. (Tr. 28) Ash had issues at this job due to her IBS, which would sometimes prevent her from working a full day. (Tr. 29) She stated that she has unexpected issues with her IBS about three times a week. (Tr. 30)

Prior to her employment as a title clerk, Ash worked for a payday loan company. (Tr. 40) She had worked there for nine and a half years. (Tr. 40) At this job, she had to close the office several times to go home to clean up due to her IBS, after which she would return to the office to finish her work. (Tr. 40-41) Ash's employer dismissed her. (Tr. 40) According to Ash, she was dismissed because the payday loan company told her she "couldn't do the job." (Tr. 40)

Ash testified that on a typical day, she takes pain medication first thing in the morning before she makes coffee. (Tr. 32) She will lay down after making the coffee in order to allow for the pain medication to take effect. (Tr. 32) She mows her grass and takes care of "all the upkeep" of her house. (Tr. 33, 197) This upkeep includes daily cleaning, weekly laundry, and repairs as needed, all presumably around Ash's house. (Tr. 197) More specifically, Ash vacuums, mops the floors, and cleans the toilet. (Tr. 33) However, Ash often takes breaks during her chores, during which time she usually rests on her couch. (Tr. 34-35) For example, Ash can mow about half of her front yard before she needs to take a break. (Tr. 38) As a result, Ash takes anywhere from several hours to a day or two to mow her lawn. (Tr. 38) Ash also states that she does not leave her home often, and if she does, it is usually in the morning. (Tr. 33) Physically, Ash can walk about half a block before the pain "feels like [her] bones are rubbing together." (Tr. 38) She can stand about 5 to 10 minutes, but her back hurts if she tries to stand longer. (Tr. 32)

At the time of the hearing, Ash was receiving several medications for her conditions. Ash was taking Lantus, Pedra, and Byetta for her diabetes.[2] (Tr. 31) Ash also checked her blood sugar three times a day. Ash also takes Aleve and Tramadol in the morning for her pain and Welchol for her IBS. (Tr. 32, 36)

### 2. Testimony of vocational expert

With respect to Ash's vocational history, vocational expert Janice Hastert testified that Ash's past positions of loan clerk and title clerk were at the light exertional level. (Tr. 42)

For the first hypothetical, the ALJ asked Hastert to determine whether someone who is limited to work at the light exertional level and who could occasionally perform various postural activities could have done Ash's past work. (Tr. 41-42) Hastert opined that the loan clerk and title clerk fall within that criterion as defined by the Dictionary of Occupational Titles ("DOT"). (Tr. 42) Hastert added that the typical break schedule for those types of jobs is as follows: a 10 to 15-minute break in the morning, half hour or hour-long lunch break, and a 10 to 15-minute break in the afternoon. (Tr. 42)

The ALJ also asked Hastert whether the jobs of loan clerk and title clerk would allow an individual to take additional, unscheduled breaks three or four times a week in order to changes clothes or go home to change. (Tr. 42) Hastert opined that such a schedule would require accommodations from most work settings. (Tr. 42) In addition, Hastert stated that typically for most of these jobs, an employer would allow an employee to be absent eight to ten days a year, and an employee would be unable to sustain such employment if he or she was missing a couple of days every week. (Tr. 43)

### B. Medical Records

The ALJ summarized Ash's medical records at Tr. 14-16. Relevant medical records are

---

[2] These medications were spelled phonetically by the court reporter.

discussed as part of the analysis.

## IV.    Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Brantley v. Colvin*, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.*

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. *Brantley*, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.

2009). In determining whether the evidence is substantial, the Court considers evidence that both

supports and detracts from the Commissioner's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir.

2007). As long as substantial evidence supports the decision, the Court may not reverse it merely

because substantial evidence exists in the record that would support a contrary outcome or because

the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022

(8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the

Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
> (2) The education, background, work history, and age of the claimant;
> (3) The medical evidence given by the claimant's treating physicians;
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
> (5) The corroboration by third parties of the claimant's physical impairment;
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

**V.  Discussion**

Ash raises three issues in this appeal.  First, she alleges that the ALJ failed to provide an

RFC supported by substantial evidence by not properly evaluating her IBS, which Ash alleges is

severe, because the ALJ did not find her testimony to be credible.  Second, Ash alleges that the ALJ

erred in not affording enough weight to the testimony of Dr. Elliott, Ash's treating physician.

Third, Ash alleges that the ALJ erred in relying on the opinion of a non-examining source, Dr.

Threlkeld, rather than the treating physician.

Ash challenges the ALJ's finding that her IBS was considered a non-severe impairment.  In

the Eighth Circuit, "[a]n impairment is not severe if it amounts only to a slight abnormality that

would not significantly limit the claimant's physical or mental ability to do basic work activities.

*Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citations omitted). The impairment must have more than a minimal effect on the claimant's ability to work. *Id.* In addition, the claimant has the burden to establish that the impairment or combination of impairments is severe. *Id.* The ALJ found that Ash had a non-severe impairment of IBS because he found that Ash's claims were not entirely credible.

### Credibility Determination

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Ash's credibility was essential to his determination of other issues. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible."); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) ("The ALJ must first evaluate the claimant's credibility before determining a claimant's RFC."); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2002) (same).

In evaluating a claimant's credibility, the ALJ should consider the claimant's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. *Choate v. Barnhart*, 457 F.3d 865, 871 (8th Cir. 2006) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions. *Id.* (citing *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995)). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).

In this case, the ALJ found that Ash's statements "concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible." (Tr. 15) An ALJ may view "[a]cts which are inconsistent with a claimant's assertion of disability" to "reflect negatively upon that claimant's credibility." *Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)). In assessing her credibility, the ALJ found that Ash's ability to perform several household tasks undermined Ash's claims as to the severity of her IBS symptoms. Ash stated in her hearing that she is able to do some housework, including vacuuming, mopping the floors, and cleaning the toilet. (Tr. 33). She also reported that she is able to mow her lawn (at a slower than average pace). (Tr. 38) In addition, the record reflects one instance when Ash had traveled to Texas. (Tr. 309). Ash's function report sheds more light on the activities of daily living that she is able to perform. (Tr. 195) On a typical day, Ash makes coffee, lets the dog out, is able to dress, clean the kitchen, vacuum, dust, sweep, and prepare her own meals. (Tr. 195-97) Ash also picks up her grandchildren from their bus stop three days per week and sometimes takes them to their doctors' appointments. (Tr. 196). Furthermore, Ash helps care for a small dog. (Tr. 196) Ash's hobbies include reading, watching TV, and completing puzzles. (Tr .199) Ash also reports that she goes to her daughters' homes and relatives' homes on a regular basis. (Tr. 199) These activities of daily living in which Ash was able to participate regularly further diminish her credibility as to the disabling nature of her IBS.

The ALJ noted that despite Ash's claims regarding her IBS, she had not discussed her IBS in detail with Dr. Elliott, even after seeing him over the course of 10 years, which suggests that her symptoms were not as serious as she suggests. (Tr. 15). The Eighth Circuit has consistently considered a patient's history of obtaining conservative treatment when evaluating his or her subjective complaints of disabling pain or symptoms. *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively

infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged"); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

The ALJ also noted that Ash appeared to work for many years with her condition. (Tr. 15); *Goff*, 421 F.3d at 792 (claimant continuing to work with impairments demonstrated that impairments were not disabling). During an office visit on September 16, 2009, Ash complained of painful, urgent diarrhea that she "has had for years." (Tr. 361) She was diagnosed with IBS (with painful diarrhea) during an office visit on December 16, 2009 (Tr. 357) Ash testified to the ALJ that she last worked in 2010.[3] (Tr. 28) Ash's subjective claims as to the severity of her IBS are inconsistent with her activities of daily living and ability to continue working as a title clerk. Consequently, the ALJ found that the objective medical evidence of record did not support a finding that Ash's discomfort would be so disruptive that she could not work full-time.

On September 16, 2009, Ash complained to Dr. Elliott of painful, urgent diarrhea, which Dr. Elliott noted she "has had for years." (Tr. 361) Dr. Elliott diagnosed Ash with IBS with painful diarrhea. (Tr. 362) But during an office visit on December 16, 2009, Dr. Elliott noted that Ash's bowels were better. (Tr. 355, 357) On February 11, 2011, she was seen by another doctor at the Kneibert Clinic, where Dr. Elliott also worked, who listed "IBS (with painful diarrhea)" under Ash's current problems. (Tr. 296) However, Ash denied having gastrointestinal issues, including nausea, vomiting, diarrhea, and constipation. (Tr. 298) Ash did not mention any gastrointestinal or IBS-related issues during her office visit on March 19, 2011. (Tr. 305)

On July 18, 2011, Ash was given Loperamide after she was diagnosed with IBS and painful diarrhea. (Tr. 312) During this visit, Ash complained that her bowels "periodically flare up and get

---

[3] Ash's work history report states that Ash worked as a title researcher from May 2010 to September 2011, and a separate position of title researcher from 1994 to September 19, 2010. (Tr. 180)

hard to control." (Tr. 309) However, during three subsequent visits to Dr. Elliott on November 11, 2011, February 25, 2012, and October 13, 2012, Ash did not mention gastrointestinal or IBS-related symptoms. (Tr. 317, 327-29, and 341). During an office visit on March 11, 2013, Dr. Elliott noted "LOTS of bowel urgency" under patient history. (Tr. 383) Furthermore, he listed "? of irritable bowel syndrome" as a "problem" under his impression and recommendations. (Tr. 383-84) During an office visit on August 8, 2013, Dr. Elliott observed that Ash's bowels were "MUCH BETTER on the Welchol." (Tr. 378) (emphasis in original)

On October 10, 2013, Ash received an annual physical from Dr. Hickey, who worked at the same clinic as Dr. Elliott. (Tr. 375). Dr. Hickey's notes that Ash was "feeling well." (Tr. 375) A list of Ash's medications included Loperamide HCL, which Ash received for "loose stools". (Tr. 375) Dr. Hickey noted under "review of symptoms" that Ash was "well nourished, well hydrated, no acute distress." (Tr. 376) On a November 8, 2013 office visit, Dr. Elliott noted that Ash was "well nourished, well hydrated, no acute distress." (Tr. 372) Under impression and recommendations, Dr. Elliott diagnosed three conditions: type II diabetes, hyperlipidemia[4], and back pain, but with no reference to IBS. (Tr. 372-73)

As shown above, the record contains inconsistencies between Ash's testimony and the objective medical evidence as to the severity of Ash's IBS. Even though Ash contends that significant deterioration was present in her case, the ALJ properly found that Ash's contentions as to her symptoms are not entirely credible because of these inconsistencies. The absence of an objective medical basis to support the degree of subjective complaints is an important factor in evaluating the credibility of the claimant's testimony and complaints. *Russell v. Sullivan*, 950 F.2d 542, 545 (8th Cir. 1991); *see also Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (lack of

---

[4] According to the American Heart Association, hyperlipidemia is the condition of having too many lipids, or fats, in the blood.
http://www.heart.org/HEARTORG/Conditions/Cholesterol/AboutCholesterol/Hyperlipidemia_UCM_434965_Article.jsp#.V-GklDW_vPE (last visited September 20, 2016)

objective medical evidence is a factor an ALJ may consider). Ash's medical history reflects only

occasional reports and diagnoses of IBS and/or painful diarrhea. (Tr. 309, 312, 362, 382-83). The

rest of her record shows either no mention of bowel symptoms or improvement of her IBS

symptoms with medication. (Tr. 305, 317, 327-29, 341, 355, 357, 378) In addition, Ash often went

months without visiting her physician, and when she did, she often did not mention her IBS. *Id.*

Furthermore, even if Ash's IBS was considered severe, there is sufficient evidence in the record to

reflect that it was not disabling. *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012)

(conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue*, 578 F.3d

838, 846 (8th Cir. 2009); *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009); *Schultz v. Astrue*,

479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it

cannot be considered disabling). Dr. Elliott observed that Ash's condition improved after she was

prescribed Welchol for her IBS. In addition, Ash did not mention her IBS during two subsequent

appointments.

In sum, the ALJ's credibility determination is supported by good reasons and substantial

evidence on the record. The Court also finds that the ALJ properly concluded that the record

contained a number of inconsistencies which diminished Ash's credibility, and thus appropriately

found that Ash's IBS was not considered a severe impairment under the Social Security Act.

Because the ALJ's determination is supported by substantial evidence on the record as a whole, the

Court defers to his determination.

**Dr. Elliott**

Dr. Elliott submitted a medical source statement-mental and a medical statement regarding

diabetes for Ash's Social Security claim. (Tr. 391-93) In Ash's medical source statement-mental,

Dr. Elliott stated that Ash is either "not significantly limited" or "moderately limited" in the

following categories: understanding and memory; sustained concentration and persistence; social

interaction; and adapt. (Tr. 391-92) Dr. Elliott also states that Ash can work 2 hours a day, stand for 15 minutes at a time, sit for 30 minutes at a time, occasionally lift 10 pounds, and frequently lift 10 pounds. (Tr. 393) Dr. Elliott's medical statements were given in checklist format. (Tr. 391-93)

The ALJ gave the opinion of Dr. Elliott little weight because it was inconsistent with the objective medical evidence. (Tr. 15-16) *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.") A treating physician's opinion is generally entitled to substantial weight but does not automatically control. *Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010) (quoting *Heino v. Astrue*, 578 F.3d 873, 880 (8th Cir.2009) (internal quotations and citation omitted). "An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Andrews v. Colvin*, 2014 WL 2968815, at *2 (E.D.Mo. July 1, 2014) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir.2000)).

The ALJ also gave little weight to Dr. Elliott's opinion because it was inconsistent with the record as a whole. (Tr. 391-93) Despite Dr. Elliott's conclusions as to Ash's physical capabilities, Ash reported at the hearing that she is able to mow her grass, vacuum, mop the floors, and clean the toilet. (Tr. 33-34) Ash apparently traveled to Texas sometime in July 2011, which would further contradict Dr. Elliott's conclusion as to Ash's physical limitations. (Tr. 309) Ash's function report also detailed several additional activities of daily living in which Ash was able to engage on a regular basis.

Further, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." Swarnes v. Astrue, Civ.

No. 08–5025–KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted); see also Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir .2010) (finding that the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration). The ALJ also considered the sporadic nature of Ash's complaints about her IBS and/or diarrhea to Dr. Elliott. (Tr. 15) Due to the inconsistency present between Dr. Elliott's opinion that Ash is severely limited, the conclusory nature of Dr. Elliott's findings, Ash's own testimony before the ALJ, and the objective medical evidence in the record, the Court finds that the ALJ properly weighed Dr. Elliott's medical opinion.

Ash relies on *Wagner v. Astrue*, 499 F.3d 842 (8th Cir. 2007), and *Samons v. Astrue*, 497 F.3d 813 (8th Cir. 2007), for her contention that Dr. Elliott's opinion should be afforded controlling, if not at least substantial, weight. (Doc. No. 9, at 11) However, the Eighth Circuit has held that the ALJ "may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *See Wagner*, 499 F.3d at 848; *see also Travis*, 477 F.3d at 1041 ("The ALJ is required to assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record.") (citation omitted). In this case, the ALJ properly considered and gave little weight to Dr. Elliott's opinion.

**Dr. Threlkeld**

The ALJ afforded more weight to a non-examining source, Dr. Kevin Threlkeld. (Tr. 16) Dr. Threlkeld found that Ash could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday, and sit (with normal breaks) for a total of about six hours in an eight-hour workday. (Tr. 49) Dr. Threlkeld found that Ash has the following postural limitations: she can occasionally climb ladders, ropes, and scaffolds; balance; stoop; kneel; crouch; and crawl. (Tr. 50)

Opinions of non-examining sources are generally given less weight than those of examining sources. *Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008). In addition, when evaluating a non-examining source's opinion, the ALJ must evaluate the degree to which the source provides supporting evidence for his or her opinion and the degree to which these opinions consider the opinions of treating and other examining sources. 20 C.F.R. § 1527(c)(3). However, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 1527(c)(4).

Dr. Threlkeld's medical evidence and conclusions were based on a review of Ash's medical history and treatment notes. (Tr. 46-52) Dr. Threlkeld referred to specific treatment notes and provided extensive support for his conclusions in his report. *Id.* Based on Ash's activities of daily living, current treatment, and other precipitating and aggravating factors, Dr. Threlkeld found Ash to be partially credible. (Tr. 49) Furthermore, Dr. Threlkeld's findings are consistent with the record when taken as a whole. The ALJ therefore properly weighed Dr. Threlkeld's medical opinion and conclusion.

**RFC Finding**

Ash contends that the ALJ failed to properly consider Ash's IBS when assessing her RFC. A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. *Moore*, 572 F.3d at 523. The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (RFC must be determined based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations, and supported by some medical evidence). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by

some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by specific medical evidence." *Hensley v. Colvin*, No. 15-2829, 2016 WL 3878219, at *3 (8th Cir. July 18, 2016) (internal quotations and citations omitted).

In finding that Ash is able to perform a range of light work, the ALJ properly considered the available medical evidence, Ash's credibility, her activities of daily living, and her work history in determining her RFC. The ALJ specifically referred to Ash's hearing testimony and Dr. Elliott's and Dr. Threlkeld's medical opinions. More specifically, the ALJ considered the wide variety of activities that Ash is able to do. The record shows that Ash is capable of performing a wide variety of household tasks and other activities of daily living. These activities include cleaning, caring for pets, preparing meals, yardwork, and socializing with family and relatives. The ALJ declined to adopt Dr. Elliott's finding as to Ash's RFC after he properly found Ash's claims on the severity of her IBS symptoms to be not entirely credible based on the evidence available to the ALJ in the record, including Ash's own recollections on her daily activities. The Court therefore finds that the ALJ properly made the RFC determination based on medical evidence and substantial evidence in the record as a whole.

## VI.     Conclusion

For these reasons, the Court finds there is substantial evidence in the record as a whole to support the denial of benefits and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and

Plaintiff's Complaint is **DISMISSED with prejudice**. A separate Judgment will accompany this

Order.

Dated this 29th day of September, 2016.

_____

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE